THOMAS W. DEWEY, Cashier, v. R. M. WHITE, Sheriff, and others.

When a sheriff has money in his hands raised under executions against the same defendant in favor of two or more different creditors, and the money is claimed by one of the creditors to the exclusion of the others, he may, for the purpose of asserting his claim, obtain a rule against the sheriff, and under the C. C. P., sec. 65, cause the other creditors to be brought in by notice, and then upon the answer of the sheriff the Court may proceed to adjudicate upon the rights of the parties, and in doing so, will not be bound by the returns which the sheriff may have previously made upon the executions in his hands.

The C. C. P., sec. 65, does not embrace a case where a sheriff has an execution in favor of one person, and levies it upon property claimed by another, as in such a case the Sheriff cannot require these persons to interplead, because, if the claim of the person. against whom there is no execution, be just, the sheriff is a wrong doer as to him.

The practice of the Courts of England prior to the Stat. of 1 and 2, Wm. 4th, ch. 58, and under that statute, upon conflicting claims to money in the hands of a sheriff raised under executions in favor of different creditors, and also the practice in like cases in the Courts of the several States of the Union, and of the United States, and of this State prior to the adoption of the C. C. P. stated and explained.

The cases of *Washington* v. *Saunders*, 2 Dev. 343, *Palmer* v. *Clark*, Ibid 354, *Ramsour* v. *Young*, 4 Ire. 133, *Whitaker* v. *Petway*, Ibid 182, and *McKesson* v. *Mendenhall*, 64 N. C. Rep. 286, cited and approved.

This was a rule before *Logan, Judge,* at the Fall Term, 1870, of the Superior Court of MECKLENBURG County, in which there was a judgment against the plaintiff from which he appealed. The case is fully stated in the opinion of the Court.

*J. H. Wilson,* for the plaintiff.
*Guion,* for the defendants.

RODMAN, J. At Fall Term, 1870, of Mecklenburg Superior Court, the plaintiff obtained a rule on the Sheriff to show cause why $7,000 in his hands, the proceeds of the sale of certain land under execution, should not be applied to the

15

·payment of the executions in his favor, which were for debts owing by the firm of M. Martin & Co., of which the part-.ners were M. Martin and John Wilkes. The application was supported by the affidavit of Wilkes that the debts were partnership debts and that the property belonged to the firm. Notice was ordered to be given to B. S. Guion, M. L. Wriston and others claiming to have the fund or a part of it applied to other executions against Wilkes, and against Wilkes and Martin, for their separate debts. The Sheriff answers the rule, and states, that at the time of the sale he had in his hands the following writs of *venditioni exponas* all issued on *fi. fas.* tested of 14 Oct., 1867, *which had been levied on the land in question as the property of M. Martin & Co.*

He says the writs came to his hands and were levied in the Spring of 1867, but as this is contradictory to what is stated as to the teste of the original *fi. fas.*, it is considered a mistake.

The executions were as follows :

No. 1. T. W. Dewey *v.* John Wilkes and M. Martin.

2. T. W. Dewey *v.* John Wilkes and B. S. Guion.

3. T. W. Dewey *v.* M. Martin, John Wilkes and Jasper Stowe.

4. First Nat. Bank of Charlotte *v.* John Wilkes and M. L. Wriston.

5. James H. Carson *v.* Wm. Boyd and John Wilkes.

The aggregate of these was $22,854. Besides these, the Sheriff had in his hands at the time of the sale other exe-·cutions of later teste, viz :

6. First Nat. Bank of Charlotte *v.* John Wilkes.

7. T. W. Dewey *v.* V. Stirewalt, M. Martin and John Wilkes.

8. Mitcher and wife *v.* John Wilkes.

Of these Nos. 1, 3 and 7 are alleged by Wilkes in his affidavit to have been upon debts owing by the partnership ;

and the aggregate of these exceeded the proceeds of the sale.

At the same term of the Court the Sheriff files what he calls a return, asking the advice of the Court, which differs from his answer to the rule, in the very important respect, that in it he says that *he levied on and sold under the executions, only the interest of John Wilkes, in the property,* and that the money in his hands was derived solely from the sale of his estate. Wriston, who purchased the property, and who as surety for Wilkes was a defendant in execution No. 4, appears to the rule, and by what may be regarded as an interplea alleges that the fund should be applied rateably to the first five named executions; because,

1. It did not appear from any of the executions that they were for partnership debts.

2. That if the land was partnership property, insomuch as the Sheriff (as appears by his return) sold only the separate estate of Wilkes, the plaintiff has no equity to any priority.

3. That the land was the separate property of Wilkes.

4. That he purchased at the sale because he had been advised by counsel that the first five executions, in one of which he was interested, would share rateably.

His Honor the Judge below, decided that he could act only on the facts as stated by the Sheriff in his return, and directed the fund to be apportioned among the first five executions, from which the plaintiff appealed. His Honor seems to have considered the return of the Sheriff referred to by Wriston, as the true return, and not the one alleged by the Sheriff in his answer to the rule; but he takes no notice of the contradiction between them ; it is singular that a doubt as to the true return should have been permitted when it could have been so easily settled by a reference to the returns to the original *fi. fas.* made *ante litem motam,* and to the returns endorsed or attached to the *venditioni exponas.*

The only question which in the view we take of the case

it is proper at this time to consider, is whether his Honor was right in confining himself to the Sheriff's return.

In 2 Tidd's Practice, 1017, it is said, " If the property of the goods be disputed, which frequently happens on a commission of bankrupt, &c., the Court, on the suggestion of a reasonable doubt, will protect the Sheriff *by enlarging the time for making his return, till the right be tried between the contending parties, or one of them has given him a sufficient indemnity.*" See also, 2 Chit. Gen. Practice, 341, and *Wells* v. *Pickman*, 7 T. R., 174. But I have not found any case where prior to the statute of 1 and 2 William 4, ch. 58, an English Court of law undertook either to advise the Sheriff in the appropriation of money raised under execution, or to direct its appropriation. The assistance which the Court gave, was confined to such as that mentioned by Tidd. In the United States, the Courts undertook to go farther and to pass directly on the appropriation of the money. This seems to have been done under the idea that the Sheriff could at any time rid himself of the responsibility of an appropriation by paying the money into Court, in which case the Court would necessarily have to assume the control of its appropriation. *Turner* v. *Fendall*, 1 Cranch 116 ; *Acker* v. *Ledyard*, 4 Seld 62, (N. Y.) But as there was no common law process by which the Court could bring in the contending parties and compel them to interplead, the Court was compelled to rely for the facts exclusively on the return of the Sheriff, (*Washington* v. *Saunders*, 2 Dev. 343 ; *Palmer* v. *Clark*, Id. 354,) and hence its decision could bind no one but the Sheriff, for, of course, it is too clear for any difference of opinion, that no decision of a Court can bind those not parties to the proceeding, and if parties they must be at liberty to dispute the return. Hence also it followed, that unless the facts were conceded, or appeared of record, the Court, which always exercised a discretion to act according to circumstances, refused to act, and left all parties to

their remedy by action at law, or by bill of interpleader in equity, or assisted the Sheriff only as had been the practice in England, by allowing a farther time for the return of the writ, or by compelling an indemnity. (*Camp* v. *McCormick*, 1 Denio 641, N. Y.) *A fortiori*, the Court would refuse to advise a Sheriff, or to direct the appropriation of the money, where his return was uncertain, defective, or contradictory. For if the Court should do either in such a case, without being able effectually to bind the contesting claimants, the Sheriff would be left exposed to action by each of them, the inconvenience which it was the sole object of the proceeding to avoid; and in the event that the facts turned out different from what the Court on an *ex parte* statement had assumed, its advice or discretion instead of being a protection to the Sheriff, would be a pitfall, or at best merely idle. It follow-ed also from the principle on which the Court proceeded— that of assisting its officer—that it would only give the as-sistance whatever it might be, at the request of the officer. The Sheriff might always, if he pleased, make the appropria-tion himself, and he was understood to do so whenever he took an indemnity from either of the parties. (*Ramsour* v. *Young*, 4 Ire. 133 ; *Whitaker* v. *Petway*, Id. 182.) If the officer applied for the assistance, of course it could make no difference whether the application was before or after a rule upon him to return the writ. And notwithstanding that the Courts in this State have *now*, the further power to order an interpleader and to adjudicate effectually on the rights of all persons interested, as I shall attempt to show, we think that the jurisdiction heretofore exercised in favor of the Sheriff, as properly understood, still subsists, and is not merged in the equitable powers of the Court, but will con-tinue to be exercised in a proper case as it has heretofore been. The practice in England was found to be very far short of affording Sheriffs a summary and adequate remedy in many cases of conflicting claims to property seized by

them.  To give that remedy, and to relieve them from the necessity of resorting to a tedious and expensive proceeding in equity, the statute of 1 and 2 William 4, ch. 58, was passed, section 6 of which applies especially to them.  It may be found in Tomlin's Law Dictionary, Title Interpleader. We have no such act in this State.

But Courts of equity were accustomed in cases of this sort, as in so many others, to make the deficient processes of the common law Courts a ground of their own jurisdiction  To a limited extent they gave relief on a conflict of claims.  The general principle of the jurisdiction is thus stated by Story, (Eq. Jur. sec. 806.)  "It (the practice of interpleader) is properly applied to cases where two or more persons severally claim the same thing under different titles, or in separate interests, from another person, who, not claiming any title or interest therein himself, and not knowing to which of the claimants he ought of right to render the debt or duty claimed, or to deliver the property in his custody, is either molested by an action or actions brought against him, or fears that he may suffer injury from the conflicting claims of the parties."  Mitford's Eq. Pl. 141, is terser and as much to the point.

The principle covers this case.  Heretofore the Courts of common law could not have applied it; but since the powers of Courts of law and of equity have been blended in the same Courts, there can be no difficulty in doing so ; and the power is expressly given by sec. 68, C. C. P., which was acted on in a case substantially the same in principle with this.  *McKesson* v. *Mendenhall,* 64 N. C. 286.  There is a class of cases to which it may be proper to advert for the purpose of distinguishing them from the present.  They decide that when a sheriff having an execution against A, levies it on property claimed by B, the sheriff cannot require A and B to interplead, because if B's claim be just, the sheriff is a wrong doer as to him, and did not come inno-

cently and lawfully into possession, as the principle requires that he shall. *Slingsby* v. *Boulton*, 1 Ves. and B. 324; *Shaw* v. *Caster*, 3 Paige R. 339. Such cases are now covered in England by their Interpleader Act. In the absence of such an Act in this State, we presume the sheriff would be left to defend himself as best he might, although no doubt the Court would assist him as far as it could by enlarging the time for his return of the writ, until the contesting parties had adjusted their claims, or until one of them had indemnified him. But those cases are unlike the present. Here it is true that the rights of the contesting creditors are alleged to rest on the ownership of the property sold; but the sheriff held executions both against the partners as such, and against them separately, so that he might have sold against all, and is not a wrong doer in any event.

As the result of this discussion, we think his Honor erred. in refusing to consider any evidence as to the real ownership of the property outside of the sheriff's return. The application is in its nature, and should be in form, an application that the contesting parties may appear and interplead, and they should be brought into Court by summons. The issues made between them must be decided as other issues. are directed to be, and the decision of the Court will bind. them as in other actions. As to the mode of proceeding, see 2 Story Eq. Jur. S. 822. When the matter of fact respecting the ownership of the property is settled, the other questions raised by Wriston can be disposed of.

Judgment below reversed, and case remanded to the Superior Court of Mecklenburg, to be proceeded in according to this opinion.

PER CURIAM. Judgment reversed.